PHILLIP A. TALBERT
Acting United States Attorney
ROSANNE L. RUST
MICHAEL D. ANDERSON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

Oct 04, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:21-cr-0185 MCE |
|---|---|
| Plaintiff, | 18 U.S.C. § 371 – Conspiracy (two counts) |
| v. | |
| AKRUM ALRAHIB, | |
| Defendant. | |

I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 371 – Conspiracy]

The United States Attorney charges: T H A T

AKRUM ALRAHIB,

defendant herein as follows:

1. Between in or about February 2017 and continuing through in or about November 2017, in the County of Sacramento, State and Eastern District of California, and elsewhere, defendant AKRUM ALRAHIB, Person 1, Person 2, and others known and unknown to the United States, did knowingly combine, conspire and agree to commit an offense against the United States of America, in violation of 18 United States Code, Section 371, that is: mail fraud, in violation of Title 18, United States Code, Section 1341.

I. **PARTIES, RELEVANT PERSONS, ENTITIES**

At all times relevant to this Information:

2. Defendant AKRUM ALRAHIB was the owner and operator of Neva Ending Wholesale, Inc. ("Neva Ending"), also known as "NEW, Inc."

3. Neva Ending was a company licensed to do business in the State of Nevada. Neva Ending was engaged in the business of distributing "Other Tobacco Products," hereinafter "OTP." OTP consists of tobacco products other than cigarettes such as cigars, chewing tobacco, and leaf tobacco.

4. Person 1 was an associate of ALRAHIB who nominally operated Company 1. Company 1 was a company licensed to do business in the state of California and held a California OTP distributor's license.

5. Person 2 was an associate of ALRAHIB and Person 1, who helped Person 1 with various functions of Company 1, including drafting OTP invoices for Company 1's OTP sales.

6. California law requires that every person who desires to engage in the sale of OTP must obtain a license from the California Department of Tax and Fee Administration ("CDTFA"), formerly part of the California Board of Equalization ("BOE"). In California, only a person who holds a valid OTP distributor's license may possess OTP upon which the tax has not been paid. When a licensed OTP distributor sells untaxed OTP in California, typically to a wholesaler, the distributor is required to collect the excise tax on that OTP from the purchaser. The licensed distributor must then submit to the CDTFA in Sacramento, California, monthly or quarterly reports reflecting the amount of untaxed OTP purchased in the previous month, or quarter, and the amount of excise tax owing, together with payment in that amount. The monthly or quarterly reports are generally sent by U.S. mail or common carrier.

7. Both tobacco distributors and tobacco wholesalers are required by California law to maintain accurate records reflecting their purchase and sale of tobacco products.

II. **OBJECTS OF THE CONSPIRACY**

The objects of the conspiracy, among others, were as follows:

8. The conspirators did devise and intend to devise a material scheme and artifice to defraud the State of California of excise tax revenue, by means of material false statements and omissions of material facts in connection with the purchase and sale of OTP.

9. The purpose of the scheme to defraud was to conceal from the State of California taxable sales of OTP in California and thereby evade payment of the excise tax on that product.

10. During the course of the scheme to defraud, defendant ALRAHIB sold approximately $13,845,751.00 in untaxed OTP for distribution within California, intending that the tax not be paid and for which the tax was not paid, thus depriving the State of California of approximately $5,508,129.00 in excise tax.

### III. MANNER AND MEANS

The manner and means of the conspiracy were, in substance, as follows:

11. Defendant ALRAHIB and others acting at his direction arranged to sell OTP from Neva Ending to OTP distributors and wholesalers located in California ("California customers").

12. At ALRAHIB's direction, Neva Ending shipped the OTP from its Nevada warehouse to locations designated by its California customers to receive the OTP, including locations that were not licensed under California law to house OTP upon which excise tax had not been paid.

13. Although ALRAHIB would often ship OTP directly to its California customers, including to locations that were not licensed under California law to house OTP upon which excise tax had not been paid, ALRAHIB filed Nevada tax returns reporting that the OTP was sold and purportedly shipped to Company 1, which, as a licensed OTP distributor in California, would be liable for the California excise tax upon distribution to downstream customers.

14. To evade the California excise tax, Person 1 and others acting at ALRAHIB's direction, including Person 2, then created invoices from Company 1 for Neva Ending's California customers reflecting purported sales from Company 1 to the California customers. The invoices falsely stated that the purchase price of the California customers' OTP was higher than the actual price paid by the customers. By falsely listing a higher sales price, it appeared on preliminary examination by BOE or CDTFA inspectors conducting examinations at the California customer's places of business that the customers had purchased OTP upon which the excise tax had been paid when it had not.

15. The California customers then paid Company 1 for the OTP in the actual amount owed, which was generally lower than the invoice price.

16. After Company 1 received payment for the OTP from the California customers, Person 1

transferred the payment from Company 1 to Neva Ending and ALRAHIB.

17. To further evade the tax liability, as part of the conspiracy, Person 1 filed false and misleading California excise tax returns on behalf of Company 1, often by mailing them to the BOE or CDTFA in Sacramento, California. Typically, Company 1's returns would falsely report that Company 1 had zero taxable OTP distributions during the reporting period and would not report the sales to the California customers.

18. To maintain the conspiracy, ALRAHIB caused Person 1 to be compensated in cash for his participation.

### IV.  OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to accomplish its objects, defendant ALRAHIB committed and caused to be committed the following overt acts, among others, within the Eastern District of California, and elsewhere:

19. On or about February 13, 2017, Neva Ending Wholesale, Inc. invoiced $93,484.80 worth of OTP to Person 1's business in Hacienda Heights, California.

20. On or about March 19, 2017, Person 1 signed and mailed in Company 1's OTP excise tax return and listed that no excise tax was owed for the prior month of February 2017.

21. On or about May 23, 2017, Person 1 wire transferred $200,000 to Neva Ending Wholesale, Inc.

22. On or about July 1, 2017, Neva Ending Wholesale, Inc. invoiced $273,912.00 worth of OTP to Person 1's business in Hacienda Heights, California.

23. On or about August 11, 2017, Person 1 wire transferred $200,000 to Neva Ending Wholesale, Inc.

24. On or about September 19, 2017, Person 1 signed and mailed in Company 1's OTP excise tax return and listed that no excise tax was owed for the prior month of August 2017.

25. On or about October 3, 2017, Neva Ending Wholesale, Inc. invoiced $347,373.60 worth of OTP to Person 1's business in Hacienda Heights, California.

26. On or about November 6, 2017, Person 1 wire transferred $200,000 to Neva Ending Wholesale, Inc.

27. On or about November 15, 2017, Neva Ending Wholesale, Inc. invoiced $387,504.00 worth of OTP to Person 1's business in Hacienda Heights, California.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: [18 U.S.C. § 371 – Conspiracy]

The United States Attorney charges: T H A T

AKRUM ALRAHIB,

defendant herein as follows:

1. Between in or about April 2016 and continuing through in or about January 2018, in the County of Sacramento, State and Eastern District of California, and elsewhere, defendant AKRUM ALRAHIB, Person 3, and others known and unknown to the United States, did knowingly combine, conspire and agree to commit an offense against the United States of America, in violation of 18 United States Code, Section 371, that is: mail fraud, in violation of Title 18, United States Code, Section 1341.

### I. PARTIES, RELEVANT PERSONS, ENTITIES

At all times relevant to this Information:

2. Defendant AKRUM ALRAHIB was the owner and operator of Neva Ending Wholesale, Inc. ("Neva Ending"), also known as "NEW, Inc."

3. Neva Ending was a company licensed to do business in the State of Nevada. Neva Ending was engaged in the business of distributing "Other Tobacco Products," hereinafter "OTP." OTP consists of tobacco products other than cigarettes such as cigars, chewing tobacco, and leaf tobacco.

4. Person 3 was an associate of ALRAHIB who operated Company 2. Company 2 was a company licensed to do business in the state of California and held a California OTP distributor's license.

5. California law requires that every person who desires to engage in the sale of OTP must obtain a license from the California Department of Tax and Fee Administration ("CDTFA"), formerly part of the California Board of Equalization ("BOE"). In California, only a person who holds a valid OTP distributor's license may possess OTP upon which the tax has not been paid. When a licensed OTP distributor sells untaxed OTP in California, typically to a wholesaler, the distributor is required to

collect the excise tax on that OTP from the purchaser.  The licensed distributor must then submit to the California Department of Tax and Fee Administration in Sacramento, California, monthly or quarterly reports reflecting the amount of untaxed OTP purchased in the previous month, or quarter, and the amount of excise tax owing, together with payment in that amount.  The monthly or quarterly reports are generally sent by U.S. mail or common carrier.

6. Both tobacco distributors and tobacco wholesalers are required by California law to maintain accurate records reflecting their purchase and sale of tobacco products.

## II.    OBJECTS OF THE CONSPIRACY

The objects of the conspiracy, among others, were as follows:

7. The conspirators did devise and intend to devise a material scheme and artifice to defraud the State of California of excise tax revenue, by means of material false statements and omissions of material facts in connection with the purchase and sale of OTP.

8. The purpose of the scheme to defraud was to conceal from the State of California taxable sales of OTP in California and thereby evade payment of the excise tax on that product.

9. During the course of the scheme to defraud, defendant ALRAHIB sold approximately $13,968,516.00 in untaxed OTP for distribution within California, intending that the tax not be paid and for which the tax was not paid, thus depriving the State of California of approximately $4,530,997.00 in excise tax.

## III.    MANNER AND MEANS

The manner and means of the conspiracy were, in substance, as follows:

10. Defendant ALRAHIB and others acting at his direction arranged to sell OTP from Neva Ending to OTP distributors and wholesalers located in California ("California customers").

11. At ALRAHIB's direction, Neva Ending shipped the OTP from its Nevada warehouse to locations designated by its California customers to receive the OTP, including locations that were not licensed under California law to house OTP upon which excise tax had not been paid.

12. Although ALRAHIB sometimes shipped OTP directly to its California customers, including to locations that were not licensed under California law to house OTP upon which excise tax had not been paid, ALRAHIB filed Nevada tax returns reporting that the OTP was sold and purportedly

shipped to Company 2, which, as a licensed OTP distributor in California, would be liable for the California excise tax upon distribution to downstream customers.

13. To evade the California excise tax, Person 3 and others acting at ALRAHIB's direction, also often created invoices from Company 2 for Neva Ending's California customers reflecting OTP sales.  The invoices falsely stated that the purchase price of the California customers' OTP from Neva Ending and Company 2 was higher than the actual price paid by the customers.  By falsely listing a higher sales price, it appeared on preliminary examination by BOE or CDTFA inspectors conducting examinations at the California customer's places of business that the customers had purchased OTP upon which the excise tax had been paid when it had not.

14. To further evade the tax liability, as part of the conspiracy, Person 3 directed that false and misleading California excise tax returns be filed on behalf of Company 2, often by mailing them to BOE or CDTFA in Sacramento, California.  Typically, Company 2's returns would falsely report that Company 2 had zero taxable OTP distributions during the reporting period and would not report the sales to the California customers.

### IV.  OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to accomplish its objects, defendant ALRAHIB committed and caused to be committed the following overt acts, among others, within the Eastern District of California, and elsewhere:

15. On or about May 14, 2016, Person 3 caused Company 2's OTP excise tax return to be signed and mailed in with a listing of no excise tax being owed for the prior month of April 2016.

16. On or about January 25, 2018, Person 3 caused Company 2's OTP excise tax return to be signed and mailed in with a listing of no excise tax being owed for the prior quarter of 2017.

Dated: October 1, 2021

PHILLIP A. TALBERT
Acting United States Attorney

*Rosanne L. Rust*
ROSANNE L. RUST
MICHAEL D. ANDERSON
Assistant United States Attorneys

**United States v. Akrum Alrahib**
**Penalties for Information**

2:21-cr-0185 MCE

**COUNT 1:**

VIOLATION: 18 U.S.C. § 371 – Conspiracy

PENALTIES: A maximum of up to 5 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**

VIOLATION: 18 U.S.C. § 371 – Conspiracy

PENALTIES: A maximum of up to 5 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)